IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NATIONWIDE MUTUAL INSURANCE CO., : | | CIVIL ACTION |
| : | | |
| v. : | | |
| : | | |
| MAUREEN REPETTO DAILY, as parent and : | | |
| Natural Guardian of William Repetto, a Minor : | | |
| : | | |
| and : | | |
| : | | |
| MICHAEL DAILY : | | NO. 02-CV-4830 |

O'NEILL, J.                                                                                           September    , 2003

## MEMORANDUM

    This is a declaratory judgment action arising out of a dispute between plaintiff Nationwide Mutual Insurance Company and defendants Maureen Repetto Daily and Michael Daily. I have before me plaintiff's motion for summary judgment and defendants' responses thereto as well as defendants' joint motion for summary judgment and plaintiff's response thereto. For the reasons stated below I will deny plaintiff's motion and grant defendants' joint motion.

## BACKGROUND

    On May 13, 2001 William (Billy) Repetto, a minor, attempted to cross a lane of traffic on Route 202 in Chadds Ford, Pennsylvania. He was accompanied by his mother's fiancé, Michael Daily. While crossing the street Billy ran into the driver's side of a car being operated by his

mother, Maureen Repetto[1] and suffered serious injury.

At the time of the accident, Michael Daily was insured under a homeowners and liability insurance policy issued by plaintiff. Pl.'s Mot. for Summ. J., ex. 1A, Elite II Homeowners Policy No. 58 37 MP 148785. Defendant Repetto filed a claim against defendant Daily's policy to cover Billy's medical expenses. Plaintiff denied the claim because it contends that Billy was an "insured" and a "regular resident of [Daily's] household" within the language of the policy, which excludes insureds and regular resident of the policyholder's household from coverage in this type of situation. Thereafter, plaintiff filed the present complaint seeking a declaratory judgment `that it does not have to pay Repetto's claim.

The policy provides two coverages that may apply to this case. The first reads: "Coverage E - Personal Liability. We will pay damages the insured is legally obligated to pay due to an occurrence." Pl.'s Mot. for Summ. J., ex 1A at 22 (p.12 of Nationwide's Homeowners Policy). The personal liability coverage is affected by the following exclusion: "Coverage E - Personal Liability does not apply to: . . . f. bodily injury to an insured . . . ." Id. at 24 (p. 14 of policy). The policy defines "insured" as "you and the following who live in your household: a. your relatives. b. any other person under age 21 and in the care of you or your relatives." Id. at 11 (p. 2 of policy). The policy listed Daily as the named insured. Id. at 2 (p.1 of "Elite II Policy Declarations"). "You" and "your" in the policy refer to "the named insured" and "the spouse who lives in the same household." Id. The limit of liability for personal liability for an occurrence is $100,000. Id.

---

[1] The defendants were married in September of 2001 but for the sake of simplicity, Mrs. Daily will be referred to by her maiden name, Repetto, and Mr. Daily will be referred to as Daily.

The second provision that may be relevant to this case provides in pertinent part: "Coverage F - Medical Payments to Others.  We will pay the necessary medical and funeral expenses incurred within three years after an accident causing bodily injury." Id. at 23 (p. 13 of policy).  The grant of coverage itself contains the following clarification: "This coverage does not apply to you.  It does not apply to regular residents of your household." Id.  The limits of liability for medical payments to others is $1,000. Id. at 2 (p.1 of Declarations).

The residence listed in the policy is "4108 Woodland Ave., Brookhaven, PA." Id.  Daily owned the Brookhaven house, but at the time of the accident he was renting it to a tenant.  Defendants Daily and Repetto had lived together with Repetto's two children from a previous marriage at the Chadds Ford residence for a year prior to the incident.  Daily had his mail forwarded to the Chadds Ford address, changed his voter registration to that address and had moved most of his personal belongings there by November 2000.  Daily still kept some business related items in the garage of the Brookhaven address.

At the time of the accident Daily paid one-quarter of the expenses for the Chadds Ford residence including part of the mortgage and utility payments.  Both defendants aver that this one-quarter payment was to cover defendant Daily's expenses only.  Defendants did not share a bank account.

Repetto avers that she was solely responsible for expenses and responsibilities related to her children.  Daily looked after their needs only when it was more convenient for him to do so than for her.  At the time of the accident Daily had no legal status with regard defendant Repetto's children.

STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Supreme Court has recognized that the moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions . . . which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). After the moving party has filed a properly supported motion, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The nonmoving party, to prevail, must make a showing sufficient to establish the existence of every element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322. The nonmoving party may not simply rest upon the allegations or denials of the party's pleading. See id. at 324.

I must determine whether any genuine issue of material fact exists. An issue is "material" only if the factual dispute "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If the record taken as a whole in a light most favorable to the nonmoving party "could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted). If the evidence for the nonmoving party is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249-50 (citations omitted).

DISCUSSION

In exercising diversity jurisdiction, I am obliged to apply the substantive law of Pennsylvania. See Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). If the Pennsylvania Supreme Court has not addressed a precise issue, I must predict how Pennsylvania courts would decide the issue taking into consideration "relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." Nationwide Mut. Ins. Co. v. Buffetta, 230 F.3d 634, 637 (3d. Cir. 2000) (citation omitted). "The opinions of intermediate state courts are 'not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court in the state would decide otherwise.'" Id. at 637, citing West v. AT&T Co., 311 U.S. 223, 227 (1940).

Interpretation of an insurance policy is a task for the court. McDowell-Wellman Eng'g Co. v. Hartford Accident & Indem. Co., 711 F.2d 521, 525 (3d Cir. 1983). When interpreting the policy my duty is to ascertain the intent of the parties as manifested in the writing. Mutual Benefit Ins. Co. v. Haver, 725 A.2d 743, 746 (Pa. 1999). When terms are defined in the language of the policy, I will apply those definitions in its interpretation. Monti v. Rockwood Ins. Co., 450 A.2d 24, 25 (Pa. Super 1982). "A court should not rewrite terms of a policy or give them a construction in conflict with the accepted and plain meaning of language used in the policy." Id. at 26, quoting Adelman v. State Farm Mut. Auto Ins. Co., 386 A.2d 535 (Pa. Super. 1978). However, if an ambiguity exists in the language of an insurance policy, I will construe the language strictly against the insurer and liberally in favor of the insured. Mfrs. Cas. Ins. Co. v. Goodville Mut. Cas. Co., 170 A.2d 571, 573 (Pa. 1961).

I.     **Billy Was Not an "Insured" Under the Policy**

Whether Bill Repetto is entitled to coverage under the personal liability section of the policy, Coverage E, hinges on whether Billy Repetto falls under the policy's definition of "insured." The policy defines "insured" as (1) the named insured, in this case Daily; (2) the named insured's relative who lives in his household; or (3) any other person under age 21 who lives in the named insured's household and is in the care of the named insured or the named insured's relatives. Pl.'s Mot. for Summ. J., ex. 1A at 12 (p. 2 of policy). Because Billy was not related to Daily at the time of the accident, the only way for Billy to meet the policy's definition of insured would be for him to be under age 21, live in Daily's household and be "in the care" of Daily or Daily's relatives. To be an insured under the policy Billy must have been at the time of the accident (1) under the age of 21; (2) living in Daily's household; and (3) in the care of Daily or one of Daily's relatives.

Billy clearly met the first requirement; he was seven years old at the time of the accident. Under the terms of the policy and the applicable law, however, Billy was neither living in Daily household nor "in the care of" defendant Daily or a relative of Daily.

    A.     **Billy Was Not Living in Daily's Household**

The policy does not define "household;" however, dictionary definitions and Pennsylvania case law provide me with guidance. The Pennsylvania Superior Court looked to Black's Law Dictionary when interpreting "household" in Donegal Mutual Ins. Co. v. State Farm Mutual Auto. Ins. Co., 546 A.2d 1212 (Pa. Super. 1988). The Court found that the term household generally refers to "a family living together." Id. at 1215, quoting Black's Law Dictionary 666 (5th ed. 1979). The newest version of Black's Law Dictionary adds a second

definition for the word household: "A group of people who dwell under the same roof." Black's (7th ed. 1999). Merriam-Webster defines household as: "those who dwell under the same roof and compose a family; *also* **:** a social unit comprised of those living together in the same dwelling." Merriam-Webster Online Dictionary (Sept. 24, 2003), at http://www.merriam-webster.com.

The dictionary definitions require two elements to make a household. First, the members must live under the same roof. Second, they must compose a social unit, either through a traditional family relationship or through a non-familial bond that is sufficiently close to resemble a traditional family relationship. These elements of a household are required also by Pennsylvania law. The Superior Court has said of a household that the "term does not apply to a relative, however close, who lives elsewhere; nor does it apply to a resident of the same residence who is not a member of the family, i.e., one who enjoys all the prerogatives of family life." Donegal Mut., 546 A.2d at 1216.

In this case, at the time of the accident Billy did live under the same roof as Daily but Billy was not a member of Daily's household. Repetto made clear in her deposition that prior to her marriage to Daily her household consisted of only herself and her children. Daily paid Repetto "to be able to reside" in her home. Repetto dep. at p. 22. Before the wedding Daily limited his role in the children's life by not imposing discipline on them or attending activities at which their father would be. Id. at 32-34. Repetto described Daily's relationship with her children before the wedding as "relatively distant" compared to their relationship since Daily became their step-father and Repetto and Daily had a baby together. Id. at 32-33. When asked about how meals were prepared and eaten in the house near the time of the accident Repetto had

difficulty saying how often Daily ate with her and her children because "it was very separated between me bringing the kids home" and Daily eating around his work schedule.  Id. at 35.

Based upon the preceding evidence I conclude that Billy was not living in Daily's household at the time of the accident.  The children were part of Repetto's household.  Daily's household consisted of one person, himself, who had made an arrangement for shelter under Repetto's roof.  Daily was a resident of the same house as Billy, but was not a member of the Repetto family at the time of the accident because he did not assume the obligations or "enjoy[] all the prerogatives of family life"  Donegal Mut., 546 A.2d at 1216.

### B.  Billy Was Not In the Care of Daily or a Relative of Daily

Plaintiff provides definitions for many terms in defendant Daily's policy, but does not define "in the care of."  This court, in Merchants Mutual Insurance Co. v. Artis, 907 F. Supp. 886 (E.D. Pa. 1995), decided that foster children who had lived with the foster parents for nine months were "in the care of" the foster parents, were members of the foster parents "household" and were "insureds" under the foster parents' insurance policy.  Plaintiff argues that Billy likewise should be considered "in the care of" defendant Daily because Daily and Billy lived together at Repetto's Chadds Ford house and defendant Daily occasionally cared for Billy and spent time with Billy's family.  I do not agree.

The foster parents in Merchants Mutual were under contract with the Department of Human Services to provide care, food and shelter to the children and thus had undertaken a duty of care for the children.  Id. At 889-90.  Defendant Daily had no such duty to Billy before or at the time of the accident.  Billy's mother, defendant Repetto, had a bank account with her ex-husband that provided money for their children's food and clothing.  Repetto dep. at 39-40.  The

house in Chadds Ford belonged to Repetto, not to Daily.  Id. at 6.  Repetto provided her children with shelter in her home and Daily paid a portion of the mortgage on the house in Chadds Ford in exchange for his lodging.  Id. at 21-22.  Repetto stated in her deposition that she did not expect Daily to care for her children because "they weren't his responsibility at the time."  Id. at 16.  Accordingly, Billy Repetto was "in the care of" his mother and father, not Daily.

As a matter of law Billy does not meet the definition of "insured" provided in the policy issued by plaintiff and bought by defendant.  Therefore, he is not excluded as a matter of law from recovery under the personal liability coverage of the policy, Coverage E.

**II.    Billy Was Not a Regular Resident of Daily's Household**

The policy's coverage that covers medical payments resulting from accidents, Coverage F, excludes payments for treatment of regular residents of the named insured's household.  This issue turns solely on the definition of Daily's household.

As I established earlier there is no genuine issue of material fact that under the policy issued by plaintiff to defendant Daily Billy was not a "regular resident" of Daily's household.  Billy is not excluded as a matter of law from recovery under the medical payments to others coverage of the policy, Coverage F.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NATIONWIDE MUTUAL INSURANCE CO., | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MAUREEN REPETTO DAILY, as parent and | : | |
| Natural Guardian of William Repetto, a Minor | : | |
| | : | |
| and | : | |
| | : | |
| MICHAEL DAILY | : | NO. 02-CV-4830 |

## **ORDER**

AND NOW, this        day of September, 2003, after considering plaintiff's motion for summary judgment, defendants' joint motion for summary judgment and the responses thereto, and for the reasons set forth in the accompanying memorandum, it is ORDERED that:

I.  Plaintiff's motion for summary judgment is DENIED; and

II. Defendant's joint motion for summary judgment is GRANTED and judgment is entered in favor of defendants Maureen Repetto Daily, as parent and natural guardian of William Repetto, a minor, and Michael Daily and against plaintiff Nationwide Mutual Insurance Co.

_____
THOMAS N. O'NEILL, JR., J.